# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. 1:10-cv-02090-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| ANGELINA CARREON HERRERA, | (Docket No. 8) |
| Defendant. | **OBJECTIONS DUE:  15 DAYS** |
| _____/ | |

## I.  INTRODUCTION

On January 10, 2010, Plaintiff, J & J Sports Productions, Inc. ("Plaintiff"), filed the present motion for default judgment against Defendant, Angelina Carreon Herrera, dba El Pio Pio ("Defendant").   (Doc. 8.)   The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  This matter was taken under submission pursuant to Local Rule 230(g).  (Doc. 12.)

## II.  FACTUAL BACKGROUND

Plaintiff filed the instant action on November 9, 2010.  (Doc. 1.)  The complaint alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of the California Business and Professions Code section 17200, *et. seq*.  The suit is based on

Defendant's alleged unlawful interception, receipt, and exhibition of *"'Firepower': Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fighting Program"* (the "Program"), a boxing match that took place and was broadcast on November 14, 2009. (Doc. 1 at ¶¶ 9, 12.) According to the complaint, Plaintiff was the exclusive commercial distributor of the Program. (Doc. 1 at ¶ 9.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain. (Doc. 1 at ¶¶ 8-16.)  Plaintiff seeks $100,000 in statutory damages as well as attorneys' fees and costs. (Doc. 1 at ¶ 17.) Count II asserts a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations. (Doc. 1 at ¶¶ 18-21.)  Plaintiff requests $60,000 in statutory damages, as well as attorneys' fees and costs. (Doc. 1 at ¶ 22.)  Count III states a claim for conversion alleging that Defendant tortiously obtained possession of the Program and wrongfully converted it for her own benefit. (Doc. 1 at ¶¶ 23-25.) As to Count III, Plaintiff seeks compensatory damages, exemplary damages, and punitive damages. (Doc. 1 at ¶ 26.) Count IV alleges a violation of the California Business & Professions Code § 17200, *et. seq*. (Doc. 1 at ¶¶ 27-34.)  As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, and attorneys' fees. (Doc. 1 at ¶¶ 35-36.)

On December 20, 2010, the summons as to Defendant Angelina Carreon Herrera, was returned showing that service of the summons and complaint was executed on December 5, 2010. (Doc. 5.)  Defendant failed to respond to the complaint by the December 27, 2010, due date.  On December 30, 2010, pursuant to Plaintiff's request, the Clerk entered default against Defendant. (Doc. 7.) On January 10, 2010, Plaintiff filed this motion for default judgment against Defendant. (Doc. 8.)  Defendant did not oppose the motion.  On February 8, 2010, the Court requested further evidence as to proof of damages for Plaintiff's claim for conversion. (Doc. 11.)  Plaintiff filed an additional declaration to support its request for damages for conversion in the amount of $2,200. (Doc. 13.)

# III.  DISCUSSION

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:
>
> (A)    conduct an accounting;
> (B)    determine the amount of damages;
> (C)    establish the truth of any allegation by evidence; or
> (D)    investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.    Analysis**

Service of the summons and complaint in this action was made on Defendant on December 5, 2010.  A copy of the Proof of Service was filed with this Court on December 20, 2010.  Defendant failed to respond to the complaint or otherwise appear in the action.  The Clerk of the Court entered default against Defendant on December 30, 2010.  Defendant is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Servicemembers Civil Relief Act of 2003.  (Doc. 8 at ¶ 1.)

In its motion, Plaintiff seeks judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory

damages) in the amount of $110,000 against Defendant for unlawfully intercepting, receiving, and exhibiting the Program on November 14, 2010, at Defendant's restaurant.  Plaintiff also seeks damages in the amount of $2,200 for its state law conversion claim.

**1.    Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii).  (Doc. 8-1 at 6:15-16, 9:24-25).  Pursuant to Section 605(a), no person receiving or transmitting any interstate or foreign communication by wire or radio shall "divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ."  Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[1] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program. (Doc. 1 at ¶ 9.)  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers.  (*Id*. at ¶ 10.)  Plaintiff claims that signal theft causes a significant impact on the broadcast industry.  (Doc. 8-1 at 5:22-23.)  Plaintiff believes that the continued signal piracy is caused, in part, by the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates.  (Doc. 8-1 at 14:23-24.)  As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

---

[1] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distributed any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming.  Plaintiff does not assert that Paragraph 4 is applicable in this case.

4

Plaintiff contends that significant enhanced statutory damages should be awarded under Section 605(e)(3)(C)(ii). Section 605(e)(3)(C)(ii) provides that where the court finds that a violation of the section was committed willfully and for purposes of direct or indirect commercial advantage, the court, in its discretion, may increase the award of damages "by an amount of not more than $100,000 for each violation of subsection (a) of this section." Emphasizing the need for deterrence as to this Defendant and others, Plaintiff requests that it be awarded $100,000 in enhanced statutory damages.

Here, the summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. *See Eitel*, 782 F.2d at 1471-72. By her default, Defendant has admitted to willfully violating Section 605 for the purposes of commercial advantage. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. However, the Court notes that Defendant's conduct was not particularly egregious. The facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of approximately eighty people. (Doc. 8-3 at 2). Plaintiff's investigator noted that there were two televisions in the establishment showing the Program on the night the Program was broadcast. (*Id*. at 1). Both televisions were small; Plaintiff's investigator estimated one to be between 23 and 25 inches and the other as approximately 19 inches. (*Id*.) At the time of the violation, Defendant's establishment had few patrons – approximately thirty people according to three separate head counts performed by Plaintiff's investigator. (*Id*. at 2.) There is no evidence that Defendant required a cover charge or engaged in advertising the broadcast of the event at her establishment to entice a large crowd. Moreover, no evidence has been presented that Defendant has previously been involved in signal piracy or is a repeat offender.

The amount of damages awarded should be in an amount that is adequate to deter this Defendant and others from committing similar acts in the future. Therefore, the Court recommends that the maximum allowable statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000. With regard to enhanced statutory damages, however, several factors militate against a substantial award. As discussed above, there is no evidence that Defendant (1) advertised the broadcast of the Program to entice a larger crowd, (2) charged a cover to enter the establishment, or (3) charged a premium for food and drinks on the night

the broadcast was shown.  Further, the headcounts during the Program indicate approximately thirty people were present in the establishment.  (Doc. 8-3 at 2.)  Moreover, Defendant has not been shown to be a repeat offender with regard to signal piracy.  Finally, considering the small impact of Defendant's conduct, the Court finds that limited enhanced damages will still produce the appropriate deterrent effect.[2]  There is no evidence that Defendant's financial resources would require a large judgment to achieve the desired deterrent effect.  However, the Court is also mindful that minimal damage awards may result in a perceived lack of consequences for signal piracy.  (*See* Doc. 13 at ¶¶ 11-13.)  Considering these factors, the Court recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $5,000.

## 2.    Damages for Conversion

Plaintiff seeks conversion damages for the value of the property at the time of the conversion. (Doc. 8-1, at 15:17-18)  Plaintiff also claims that it is entitled to "compensation for the time and money properly expended in pursuit of the property" based on Cal. Civ. Code § 3336.  (*Id*. at 15:20-21).

Under California law, conversion is the wrongful exercise of dominion over the property of another.  The elements of conversion are (1) the plaintiff's ownership of right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."  *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009).  Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of

---

[2] Plaintiff asserts that because Defendant's establishment is located in Tulare County which has an estimated population in excess of 429,668 it is located in a relatively urban area increasing the impact of the piracy and should support a larger enhanced damage award.  (Doc. 8-1 at 11:6-19.)  However, Plaintiff's investigator's declaration states that Defendant's establishment is "[s]ituated within the rural unincorporated community of Orosi (Tulare County), it is located on the southwest corner of Road 128 and Avenue 413 (see included photographs). [Its] clientele appeared to primarily consist of Spanish[-]speaking laborers."  (Doc. 8-3 at 2.)

intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182,1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law.)

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possession of the property at the time of the conversion. Because Defendant did not legally purchase the Program, the exhibition of the fight in El Pio Pio on November 14, 2009, constituted conversion by a wrongful act or disposition of property rights. Finally, the rate card for the Program at an establishment with a seating capacity of between zero and 100, which would apply to Defendant's establishment, indicates that the sub-license fee for the Program would have been $2,200.  (Doc. 13 at Exhibit 1.)  Thus, Plaintiff is entitled to damages for conversion in the amount of $2,200.

## IV.  RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.      Plaintiff's motion for default judgment be GRANTED;

2.      Judgment be entered in this action against Defendant Angelina Carreon Herrera individually and dba El Pio Pio as follows:

    a.      $10,000 statutory damages for violation of 47 U.S.C. § 605;

    b.      $5,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and

    c.      $2,200 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **February 16, 2011**                    /s/ **Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE